# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2437 | **DATE** | 9/9/2004 |
| **CASE TITLE** | Stephen Bridge, et al vs. Transpersonnel, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. The Fund's motion for summary judgment (Docket No. 15-1) is granted and Transpersonnel's cross-motion for summary judgment (Docket No. 18-1) is denied. Plaintiffs are directed to submit a proposed form of judgment in an amount certain within 14 days of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 10 2004 date docketed | |
| | Notified counsel by telephone. | | | 31 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 9/9/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom ETV deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHEN BRIDGE, MICHAEL COLGAN, )
PAUL DiGRAZIA, WILLIAM O'LEARY, )
JOHN NAUGHTON, ROBERT PERSAK, )
HUGH ROBERTS and GERALD ZERO, )
as TRUSTEES of the LOCAL 705 )
INTERNATIONAL BROTHERHOOD OF )
TEAMSTERS PENSION FUND, )
)
        Plaintiffs, )
)
v. ) No. 03 C 2437
)
TRANSPERSONNEL, INC., an Illinois ) Judge Rebecca R. Pallmeyer
corporation, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER    SEP 1 0 2004

Plaintiffs are trustees of the Local 705 International Brotherhood of Teamsters Pension Fund (the "Fund"), a multiemployer pension plan and employee benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendant Transpersonnel, Inc. was a signatory to the Local 705 International Brotherhood of Teamsters' collective bargaining agreements and was required to make contributions to the Fund on behalf of covered employees. In July 2002, the Fund demanded withdrawal liability payment from Transpersonnel due to an alleged series of partial withdrawals, followed by complete withdrawal from the Fund. Transpersonnel challenged the assessment and attempted to settle the dispute with the Fund. The company failed, however, to make the statutorily required interim withdrawal liability payments during the settlement negotiations.

Plaintiffs ultimately filed suit to recover the interim payments, and also sought interest, liquidated damages, attorneys' fees, and costs. Upon receiving the Complaint, Transpersonnel paid all outstanding withdrawal liability plus interest. Arguing that this payment has rendered Plaintiffs' allegations moot, the company seeks summary judgment in its favor. Plaintiffs have

filed a cross-motion for summary judgment, claiming that they are entitled to interest, liquidated damages, attorneys' fees and costs because they did not receive payment until they filed this lawsuit. For the reasons set forth here, Plaintiffs' motion is granted and Transpersonnel's motion is denied.

## FACTUAL BACKGROUND

On July 1, 2002, the Fund served Transpersonnel and its attorney, Mark A. Spognardi, with four letters demanding $441,826.96 in payment for withdrawal liability in each of four plan years. Specifically, the Fund requested $283,029.06 for a partial withdrawal in 1995; $129,767.89 for a partial withdrawal in 1997; $29,030.01 for a partial withdrawal in 1998; and $0 for a complete withdrawal in 2002.[1] (Defendant's Statement of Material Facts As to Which There is No Genuine Issue (hereinafter "Def.'s 56.1 Stmt.") ¶ 7; Notices and Demands for Payment dated 7/1/02, Exs. A-D to Def's 56.1 Stmt.; Plaintiff's Statement of Material Facts (hereinafter "Pltf.'s 56.1 Stmt.") ¶¶ 16–20.) The letters were addressed to both Mr. Spognardi and Robert P. Hanley, a former president of Transpersonnel who had retired from the company in February 2000, and outlined a schedule of interim payments to commence on September 1, 2002. (Pltf.'s 56.1 Stmt. ¶¶ 17–19; Letters from J. Witt to R. Hanley, Ex. A to Def.'s 56.1 Stmt.) Upon receiving the notices, Transpersonnel initiated discussions with the Fund regarding the amount owed and the possibility of settlement. (Def.'s 56.1 Stmt. ¶ 8.)

By letters dated July 30, September 10, and September 30, 2002, Transpersonnel requested that the Fund provide additional information necessary to assess the accuracy of the Fund's liability estimate. (*Id.* ¶ 9.) Also on September 30, 2002, the company served the Fund with a formal Request for Review of the Fund's withdrawal liability demands as provided under

---

[1] The Fund calculated that Transpersonnel's complete withdrawal liability was $356,170.88, but the company was allowed to deduct the amounts owed for partial withdrawal liability in plan years 1995, 1997, and 1998 ($441,826.96), which reduced the balance to $0.

2

ERISA. (*Id.* ¶ 10.) *See* 29 U.S.C. § 4219(b)(2)(A). Shortly thereafter on November 7, 2002, the Fund sent Transpersonnel three letters – one for each of the three partial withdrawal claims resulting in financial liability – stating that the company was delinquent in its interim withdrawal liability payments and demanding that such payments be made within 30 days for plan year 1998, and within 60 days for plan years 1995 and 1997. (Pltf.'s 56.1 Stmt. ¶ 24.) These letters, addressed only to Mr. Hanley, were not sent or copied to Mr. Spognardi. (Def.'s 56.1 Stmt. ¶ 11.) Transpersonnel neither admits nor denies receiving the letters, but the Fund received Certified Mail Return Receipts for all three. (Pltf.'s 56.1 Stmt. ¶ 29.)

On or about January 9, 2003, Mr. Spognardi met with the Fund's attorney, Robert Seltzer, to discuss settlement.[2] (Def.'s 56.1 Stmt. ¶ 12.) At one point in the meeting, Mr. Seltzer asked Mr. Spognardi whether Transpersonnel had been making interim withdrawal payments. Mr. Spognardi replied that the company had not done so due to the pending settlement negotiations. In response, Mr. Seltzer neither demanded that payments be made, nor mentioned the letters the Fund had sent to the company in that regard. (*Id.*) Shortly thereafter on January 16, 2003, Transpersonnel sent the Fund a letter offering to settle the matter for $100,000. (*Id.* ¶ 13.)

On January 27, 2003, Transpersonnel filed a demand for arbitration to dispute the withdrawal liability assessment, which remained pending as of the date of these motions. (*Id.* ¶ 14.) *See* 29 U.S.C. § 1401. On February 7, 2003, the Fund sent Transpersonnel a letter rejecting its settlement offer and demanding $356,170.88 to settle the matter. (Def.'s 56.1 Stmt. ¶ 15.) The letter advised Transpersonnel that the figure was "a final offer which will be open until February 28, 2003," and that if the company did not accept the offer by that date, "the Fund

---

[2] Also present at the meeting on behalf of Transpersonnel were Jeffrey Hart, President; Glen Strunk, Director of Customer Support; and James Kingma, Director and Senior Assistant Legal Counsel. (Def.'s 56.1 Stmt. ¶ 12.)

3

will immediately take appropriate legal action to collect any delinquent withdrawal liability installment payments owed by Transpersonnel to the Fund, plus interest, liquidated damages and attorneys' fees and costs." (Letter from B. Hillman to M. Spognardi dated 2/7/03, Ex. E to Def.'s 56.1 Stmt.)

Over the next two months, the parties continued to engage in settlement discussions and exchanged several settlement offers. Transpersonnel claims that throughout these discussions, the Fund never demanded that the company make interim withdrawal payments. (Def.'s 56.1 Stmt. ¶ 15.) On April 9, 2003, however, the Fund filed this lawsuit seeking full payment plus interest, liquidated damages, attorneys' fees, and costs. (*Id.* ¶ 16; Pltf.'s 56.1 Stmt. ¶ 33.) The following day, another Fund attorney, Peter C. Swanson, sent Transpersonnel attorney Spognardi a letter advising him of the lawsuit and of the November 7, 2002 letters demanding interim payments. (*Id.* ¶ 17; Letter from P. Swanson to M. Spognardi dated 4/10/03, Ex. F to Def.'s 56.1 Stmt.)

In response to the lawsuit, Transpersonnel sent the Fund a letter offering $225,000 to settle the case and requesting a statement of the arrearages in the interim payments. (*Id.* ¶ 18; Letter from M. Spognardi to R. Seltzer dated 5/8/03, Ex. G to Def.'s 56.1 Stmt.) On May 23, 2003, Transpersonnel hand-delivered to Fund attorney Seltzer a check in the amount of $300,627.63 to cover past interim payments, and a letter stating that the company would be making monthly payments pursuant to the Fund's established schedule. (*Id.* ¶ 19.) The Fund acknowledges that Transpersonnel has now paid the full principal amount of its withdrawal liability, but claims that the company still owes interest, liquidated damages, and "other collection costs." (Pltf.'s 56.1 Stmt. ¶ 38.) Transpersonnel insists that the Fund has received all it is due and has no basis for further recovery.

4

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering cross-motions for summary judgment, the court must view the evidence in a light most favorable to the party opposing the motion under consideration. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001).

### I. ERISA Withdrawal Liability

Under ERISA, an employer that withdraws from a multiemployer pension plan is required to make contributions to ensure that it pays its share of the unfunded vested benefits of the plan. 29 U.S.C. §§ 1381, 1391; *Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1014 (7th Cir. 2001). An employer may contest a fund's assessment of withdrawal liability but must make "interim withdrawal liability payments" pending arbitration. *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 204 F.3d 736, 739 (7th Cir. 2000). *See also Bomar Nat'l*, 253 F.3d at 1014-15. This "pay now, dispute later" scheme "reduc[es] the risk that an employer will not pay and . . . encourag[es] speedy adjudication by requiring immediate arbitration before the courts become involved in the merits of the dispute." *Bomar Nat'l*, 253 F.3d at 1015 (citing 29 U.S.C. §§ 1399(c)(2)). If an employer fails to make timely interim withdrawal liability payments as required by statute, a fund may file an appropriate action in federal court. 29 U.S.C. § 1451(b). In addition to recovering the delinquent payments, a fund may be awarded interest, liquidated damages, attorneys' fees and costs. 29 U.S.C. §§ 1451(b) and (e). *See Central States v.*

*Bomar Nat'l, Inc.*, No. 99 C 0346, 2000 WL 263979, at *5 (N.D. Ill. Feb. 29, 2000), *aff'd*, 253 F.3d 1011 (7th Cir. 2001).

Plaintiffs claim that they are entitled to interest, liquidated damages, attorneys' fees and costs because they had to file this lawsuit to recover the interim withdrawal liability payments required by statute. Transpersonnel argues that Plaintiffs' lawsuit is moot now that the company has paid its withdrawal liability in full, and that Plaintiffs are not prevailing parties entitled to recover under ERISA §§ 1451(b) or (e). Transpersonnel also claims that Plaintiffs are barred from seeking any additional monies under the doctrines of waiver and estoppel. The court considers each argument in turn.

## II.     Mootness

Transpersonnel first argues that the Fund's lawsuit is moot now that the company has paid the outstanding principal withdrawal liability. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Stotts v. Community Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000). According to Transpersonnel, "[b]ecause [the company] has fully satisfied the Fund's demand for withdrawal payments, with scheduled interest, there is no dispute over which to litigate and the Fund has no remaining stake in the litigation." (Memorandum of Law in Support of Defendant's Motion for Summary Judgment (hereinafter "Def.'s Mem."), at 6) (citing *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994).)

The court disagrees. Controlling case law makes it clear that a pension fund's right to collect penalties for late payment is not extinguished by an employer's payment of those obligations. In *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corp.*, 258 F.3d 645 (7th Cir. 2001), the Seventh Circuit stated that "[t]he interest and liquidated-damages provisions of ERISA apply . . . to contributions that are unpaid at the date of suit (not

6

the date of judgment, as argued by the defendant)." *Id.* at 655. *See also Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1342 (7th Cir. 1992) ("[l]iquidated damages . . . are something that an employer who has withdrawn from an ERISA plan *must pay* . . . as a penalty for refusing to follow the statutory procedure for challenging assessments of withdrawal liability. Liability for liquidated damages is separate from the underlying withdrawal liability itself") (emphasis added); *Iron Workers Dist. Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995) ("an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorneys fees, and costs simply by paying the delinquent contributions before entry of a judgment in a [Section] 1132(g)(2) action").

Transpersonnel objects that *Gustafson* involved delinquent pension fund *contributions* as opposed to interim withdrawal liability payments. In the court's view, however, this is a distinction without a difference; the statute explicitly states that delinquent withdrawal liability payments are to be treated in the same manner as delinquent contributions. 29 U.S.C. § 1451(b); *Bomar Nat'l*, 2000 WL 263979, at *5. Thus, Plaintiffs' claim for penalties arising from Transpersonnel's delinquent interim withdrawal liability payments is not moot merely because the company has now made the withdrawal payments in response to this lawsuit.[3]

## III. Prevailing Party Status

Transpersonnel next argues that the Fund cannot recover interest, liquidated damages, attorneys' fees and costs because no judgment has been entered in favor of the Fund as a

---

[3] Defendant has also suggested that the controversy is moot because the company has paid the Fund more money than was demanded in the Fund's final settlement offer. Even assuming such evidence were admissible under FED R. EVID. 408, the fact that Plaintiffs might have been willing to accept a certain sum in order to avoid the cost and risk of litigation does not establish that their claim for full payment under the statute is somehow waived or moot.

7

"prevailing party" under ERISA § 1451. Section 1451(b) provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b). A claim for fees under § 1145 is governed by § 1132(g)(2), which provides for interest, liquidated damages, attorneys' fees, and costs when "a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2). *See also Central States, Southeast and Southwest Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1377 (7th Cir. 1992) ("[§] 1451 expressly assimilates failures to satisfy withdrawal liability to violations of section 1145"). Section 1451(e) also provides for a discretionary award of attorneys' fees and costs to "the prevailing party." 29 U.S.C. § 1451(e).

In Transpersonnel's view, the fact that it made the required interim payments without being ordered to do so by the court precludes a finding that the Fund "prevailed" in this case. In support of this argument, Transpersonnel cites *Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* 532 U.S. 598 (2001), in which the operator of assisted living residences argued that a West Virginia state law requiring that residents be capable of "self-preservation" violated federal fair housing and disability rights laws. *Id.* at 600-01. While the lawsuit was pending, the state legislature enacted laws withdrawing the self-preservation language and the district court dismissed the plaintiff's lawsuit as moot. The plaintiff then sought an award of attorneys' fees as a "prevailing party" under the relevant federal statutes. *Id.* at 601. The district and appellate courts both rejected the plaintiff's theory that it was a prevailing party because the lawsuit brought about a voluntary change in the defendant's conduct, and denied the request for fees. *Id.* at 601-02. The Supreme Court affirmed, observing that "a 'prevailing party' is one who has been awarded some relief by the

court." *Id.* at 602. According to the Court, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Id.* at 605.

It is not clear that the Supreme Court's holding in *Buckhannon* applies to ERISA. *See Trustees of Eastern States Health and Welfare Fund v. Crystal Art Corp.*, No. 00 Civ. 0887(NRB), 2004 WL 1118245 (S.D.N.Y. May 19, 2004) (finding *Buckhannon* inapplicable to Section 1132(g)(2), which applies to awards sought under § 1451(b), because the statute does not use the term "prevailing party" and because delinquent employers cannot avoid liability for ERISA penalties by paying outstanding contributions after a lawsuit has been filed); *Adams v. Bowater Inc.*, 313 F.3d 611, 615 (1st Cir. 2002) (noting that *Buckhannon* required a formal judgment "under one statute . . . but [that] the ERISA statute is differently phrased and conceivably the result could be different"). *But see Reed v. Shenandoah Memorial Hosp.*, No. 8:01CV435, 2002 WL 1964826, at *2 (D. Neb. Aug. 12, 2002) (declining to decide whether *Buckhannon* is binding authority for interpreting ERISA's attorneys' fee provision). Indeed, the rationale in *Buckhannon* is arguably inconsistent with ERISA's unique "pay now, dispute later" scheme, which is designed to ensure that the employer will pay any monies owed and to encourage speedy resolution through arbitration "before the courts become involved in the merits of the dispute." *Bomar Nat'l*, 253 F.3d at 1015.

As explained in the case law cited above, an employer cannot avoid ERISA's mandatory penalties simply by paying the delinquent contributions after the plan has already filed a lawsuit. *See, e.g., Hudson Steel Fabricators & Erectors*, 68 F.3d at 1506. Moreover, an employer that fails to pay interim withdrawal payments is liable for penalties even if it is ultimately determined not to owe any withdrawal liability at all. *Lady Baltimore Foods*, 960 F.2d at 1342 (fund was entitled to keep liquidated damages awarded against employer that failed to make interim

9

withdrawal liability payments even though employer was ultimately found not liable for the underlying withdrawal liability). Allowing an employer to withhold payment pending a lawsuit and then pay in full without incurring any penalties would, in this court's view, be contrary to the language of the statute.

In any event, the court finds *Buckhannon* distinguishable from this case. In *Buckhannon*, all of the plaintiff's demands were completely and voluntarily satisfied when the State changed the law. In this case, conversely, Plaintiffs' demands have been only partially satisfied by Transpersonnel; the company has refused to pay additional interest, liquidated damages, attorneys' fees and costs provided for by statute. For similar reasons, this case, unlike *Buckhannon*, has not been rendered moot by Transpersonnel's actions. As explained earlier, the controversy over the penalties associated with Defendant's late payments is still pending. Plaintiffs therefore qualify for penalties under ERISA § 1451(b) and Transpersonnel's motion for summary judgment on this basis is denied.[4]

### IV. Waiver and Estoppel

In a final attempt to avoid paying any penalties in this case, Transpersonnel argues that the Fund's conduct during the settlement negotiations constituted an implied waiver of its right to collect interim withdrawal liability payments and misled the company into believing the Fund was not demanding such payments. It is undisputed that the Fund sent Transpersonnel notices and demands for payment on July 1, 2002 as required by statute. 29 U.S.C. § 1399(b). The evidence also establishes that the Fund again demanded payment from the company by letters dated November 7, 2002. According to Transpersonnel, however, these demands were offset by the Fund's attorney, Robert Seltzer, who implied in January 2003 that the company did not

---

[4] Having determined that Plaintiffs may recover under § 1451(b), the court need not address whether they are also entitled to discretionary fees and costs under § 1451(e).

10

have to make any interim withdrawal liability payments pending settlement negotiations. Specifically, during a meeting to discuss settlement on January 9, 2003, Transpersonnel's attorney, Mark Spognardi, told Mr. Seltzer that the company was not making, and did not plan to make, any interim payments. In response, Mr. Seltzer said nothing; he did not mention the November 7 letters or otherwise indicate that the Fund intended to enforce its right to collect interim payments. Transpersonnel contends that this silence misled the company into believing that the Fund was waiving its right to collect interim payments and that the Fund should be estopped from seeking penalties as a result.

### A. Implied Waiver

A party can intentionally relinquish a known right "by conduct inconsistent with an intent to enforce that right." *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979). Such an implied waiver requires "a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Heller Int'l Corp. v. Sharp*, 974 F.2d 850, 861 (7th Cir. 1992). Transpersonnel claims that the Fund impliedly waived its right to receive interim payments by failing to respond when Mr. Spognardi acknowledged that the company was not making those payments and then continuing settlement negotiations. Viewed in context, Mr. Seltzer's silence at the January 2003 meeting does not constitute a clear, unequivocal and decisive act sufficient to support an implied waiver.

It is undisputed that the Fund demanded interim payments by letters dated July 1 and November 7, 2002. Transpersonnel finds it significant that the November 7 letters were improperly addressed to past president Robert Hanley, and that the Fund failed to send them directly to the company's attorney. The company, however, did receive the letters notwithstanding the improper addressee, as evidenced by the Certified Mail Return Receipts, and could certainly have forwarded them to its attorney. Significantly, the July 1, 2002 notices

11

and demands were similarly addressed to Mr. Hanley, but there is no evidence that Transpersonnel notified the Fund that he was no longer with the company. In addition, on February 7, 2003, nearly a month after Mr. Seltzer's silence at the settlement meeting, the Fund sent the company a letter stating that it would take legal action to enforce interim payments if Transpersonnel rejected the Fund's final settlement offer. Transpersonnel objects that the February letter was sent by a lawyer who previously had not been involved with the settlement negotiations. The company cites no authority, however, suggesting that a formal communication is irrelevant unless it was sent by an attorney involved in settlement negotiations.

Nor is the court persuaded that Transpersonnel properly disregarded the threat of legal action in the February 7, 2003 letter as mere "boilerplate" language and "puffery." In light of ERISA's clear requirement that employers make interim payments, the November 7 letters demanding such payments, and the absence of any express waiver of the Fund's right to receive those payments, Mr. Seltzer's silence on January 9, 2003, standing alone, does not justify the company's decision to ignore the Fund's written demands. Transpersonnel insists that the Fund's willing participation in ongoing settlement discussions after making the February 2003 demand for interim payments gave Transpersonnel the impression that the Fund had waived its right to those payments. A party's willingness to try to resolve a dispute, however, does not constitute a permanent waiver of the right to collect monies owed. *Central States, Southeast and Southwest Areas Pension Fund v. Nitehawk Express, Inc.*, No. 95 C 3944, 1996 WL 467231, at *7 (N.D. Ill. Aug. 15, 1996) (fund did not permanently relinquish its right to collect interim payments where its settlement letter expressly stated that it was not waiving that right).

Transpersonnel notes that unlike the defendants in *Nitehawk Express*, who did nothing after receiving the plaintiff's demand for interim payments, Transpersonnel actively pursued

settlement with the Fund. In Transpersonnel's view, if the Fund was serious in its demand for payment, its attorneys should have said as much in the many written and oral communications between the parties. This argument fails because the Fund's February 7, 2003 letter, which was part of the settlement negotiations, contained precisely such a demand: "If Transpersonnel does not accept this offer . . . the Fund will immediately take appropriate legal action to collect any delinquent withdrawal liability installment payments owed by Transpersonnel to the Fund." (Letter from B. Hillman to M. Spognardi of 2/7/03, Ex. E to Def.'s 56.1 Stmt.) On these facts, Transpersonnel has failed to establish that the Fund waived its right to interim withdrawal liability payments or associated penalties.

### B.     Estoppel

Finally, Transpersonnel argues that even if the doctrine of implied waiver does not apply, Plaintiffs should be estopped from recovering penalties for late payments because the company reasonably inferred from the Fund's conduct that the Fund would not enforce its right to collect interim payments. In support of this argument, Transpersonnel again relies on the facts that Mr. Seltzer did not demand interim payments or tell Mr. Spognardi about the written demands; the Fund continued to engage in settlement negotiations though Transpersonnel was not making interim payments; and the Fund waited two months to file suit after Transpersonnel rejected the February 7 "final" settlement offer. (Def.'s Mem., at 14; Defendant's Reply Brief in Support of its Motion for Summary Judgment, at 9-10.)

To establish the defense of equitable estoppel, Transpersonnel must show that (1) the Fund knowingly misrepresented or concealed a material fact; (2) the company, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the company suffered detriment; and (4) the company had no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise. *Krawczyk v. Harnischfeger Corp.*, 41

F.3d 276, 280 (7th Cir. 1994). Transpersonnel cannot establish three of these elements. Transpersonnel has offered no evidence that the Fund knowingly misrepresented or concealed the fact that it would enforce the required interim payments. Nor did the company reasonably rely on any such misrepresentations; as noted, the Fund sent correspondence explicitly demanding that payments be made. Moreover, the company had a convenient means of ascertaining the true facts on this issue; i.e., asking the Fund whether it intended to collect interim payments and, if not, requesting a written waiver. Thus, Transpersonnel cannot avoid ERISA's statutory penalties under an estoppel theory.

## CONCLUSION

For the reasons stated above, the Fund's motion for summary judgment (Docket No. 15-1) is granted and Transpersonnel's cross-motion for summary judgment (Docket No. 18-1) is denied.

ENTER:

Dated: September 9, 2004

REBECCA R. PALLMEYER
United States District Judge